IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JANE DOE, a United States citizen, and Colorado resident,

*Plaintiff*

v.

ABDLCOMMUNITYFORUS.COM d/b/a ABDL Community, ABDL Community For All, and ABDL Community For Us, a business operating in the United States, JOHN ROE, owner and operator of ABDL COMMUNITYFORUS.com and a United States citizen of unknown domicile, and JANE ROES 1-2, employees or agents of JOHN ROE and ABDL COMMUNITYFORUS.COM
.

*Defendants.*

**COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff Jane Doe, by and through her counsel of record, pursuant to Rules 3, 7(a) and 8(a) of the Federal Rules of Civil Procedure, commences this action by filing this Complaint against ABDLCOMMUNITYFORUS.COM ("ABDL Community") and its owner, John Roe, and Jane Roes 1-2, employees or agents of John Roe and ABDL Community For Us (individually "Defendant" and collectively "Defendants"), and states and alleges as follows:

**PARTIES**

1. Ms. Doe is an individual and a U.S. citizen domiciled in Colorado.

2. ABDL Community is a business operating across the United States with a currently unknown principal place of business or domicile.

1

3. No state business registration for ABDL Community or any of its affiliated designations, including but not limited to ABDLCOMMUNITYFORUS.COM, ABDL Community For Us, and ABDL Community For All, can be found on the Colorado Secretary of State website.

4. Defendant John Roe is an individual, and, upon information and belief, is not a citizen of the State of Colorado.

5. Defendants Jane Roes 1-2 are individuals, and, upon information and belief, are not citizens of the State of Colorado.

## JURISDICTION

6. This Court may exercise subject matter jurisdiction over the claims set forth in this Complaint because "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

7. Subject matter jurisdiction is also appropriate in the above-captioned civil action as the Plaintiff brings several claims arising under federal law. 28 U.S.C. § 1331.

8. This Court may exercise personal jurisdiction over the Defendants based upon their presence within this judicial district, as described below. Through the actions subject to this Complaint, the Defendants had sufficient contact and relations with the State of Colorado to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

9. Venue in this Court is proper because "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district. 28 U.S.C. § 1391(b)(2).

## STATEMENT OF FACTS

10. On or around March 13, 2023, Ms. Doe was contacted over Twitter (now "X") by an individual under the username "baby_brendan508 "("BABY_BRENDAN508")

11. BABY_BRENDAN508 shared screenshots with Ms. Doe in which a professional persona assumed by Ms. Doe, including her name and images, was being used by an agent of ABDL Community ("Jane Roe 1") in the course of providing services purchased from www.abdlcommunityforus.com (the "Website").

12. Jane Roe 1 in the screenshots provided by BABY_BRENDAN508 to Ms. Doe represents to him that she is the real Ms. Doe.

13. Ms. Doe has never authorized, permitted, or otherwise consented to ABDL Community or any of its agents to use her identity or likeness.

14. BABY_BRENDAN508 represented, and as verified in his text messages, sent thousands of dollars over CashApp for services to be performed by Jane Roe 1 in connection with ABDL Community.

15. ABDL Community describes itself on the Website as "a social Space where all ABDLs connect & meet new people for friendships & long relationships Abdl's, BDSM, MOMMY & DADDY WORLDWIDE."

16. The Website further represents that customers of the Website and its corresponding phone application from Spaces by Wix.com can purchase a membership for $99.99 USD to access a series of benefits, including "full navigation of community mobile app, admission into local nurseries around you and in your local area, meet adult babies, caregivers (mommy/daddy), switch meet mistresses & master domme's, free social nursery meetings, roleplay & playtime sessions, free ticket and gift card voucher at our nursery."

17. The Website also represents that customers can pay for various membership plans, including a Mommy Pay-2-Play subscription, with a credit card online at https://www.abdlcommunityforus.com/payment-page, ranging from $99.00 USD to $149.00

USD.

18. Per the Website, ABDL Community uses a phone application created using the Spaces by Wix.com phone application and the Wix website builder to book and provide services to individuals around the United States.

19. Persons in the United States can download the ABDL Community phone application through Google Play and the App Store from Apple.

20. Defendant John Roe owns and operates ABDL Community through the Website and the corresponding ABDL Community phone application provided through Spaces by Wix.com.

21. On or around May 2, 2023, Ms. Doe was contacted over social media by another customer of ABDL Community under the username "Robert Blackwell" ("ROBERT BLACKWELL") inquiring if she was the real Ms. Doe.

22. ROBERT BLACKWELL provided to Ms. Doe screenshots of his conversations with an agent of ABDL Community ("Jane Roe 2") using Ms. Doe's photographs and videos, including pictures and videos taken from behind paywall and privacy-protected accounts of Ms. Doe.

23. Ms. Doe holds the intellectual property rights to the photos and videos disseminated by ABDL Community and its agents, including but not limited to Jane Roe 1 and Jane Roe 2.

24. ROBERT BLACKWELL also sent a screenshot to Ms. Doe taken from inside the ABDL Community phone application which shows a "senior caregiver" under the name of "Mommy Tina" using Ms. Doe's images as her own.

25. Based on information and belief, ABDL Community assigned Jane Roe 2 as a "mommy" to ROBERT BLACKWELL after he paid the company money for the services to be performed by Jane Roe 2.

26. Prior to interacting with Jane Roe 2, ROBERT BLACKWELL received the following

4

message from ABDL Community: "We're processing the funds to deposit into your account for payment and once Mommy Tina signs the affidavit she'll be coming home immediately."

27. ROBERT BLACKWELL represented to Ms. Doe that he spent $13,543.00 USD of his personal savings to purchase services to be performed by Jane Roe 2 through ABDL Community with the understanding he was interfacing with the real Jane Doe.

28. Jane Roe 2 in social media messages explicitly claimed to ROBERT BLACKWELL that her account had been hacked and that Ms. Doe was the real imposter.

29. Jane Roe 2 in the screenshots provided to Ms. Doe also threatened to post or otherwise distribute all of ROBERT BLACKWELL's nude images on social media and contact his wife unless he sent her $800.00 USD.

30. Over the course of various social media communications with ROBERT BLACKWELL, Jane Roe 2 represented she was located, or otherwise communicating with him, from within the State of New York.

31. ROBERT BLACKWELL provided Ms. Doe a screenshot of a communication he received from ABDL Community which states he was being contacted by the company's "New York Department."

32. On September 11, 2023, ABDL Community on its official Facebook page located at www.facebook.com/ABDLCommunity4us ("ABDL Community Facebook") posted a video reel with the title "Join us now for playtime sessions worldwide."

33. In the video reel posted by ABDL Community on September 11, 2023, at its official Facebook page, one of its "senior caregivers" can be seen using Ms. Doe's photographs.

34. The ABDL Community Facebook lists (805) 864-1506 as the company's phone number.

35. The ABDL Community Facebook currently has over 6,600 followers.

36. The Website services page states it provides "Playdates & Ageplay" and "Nurseries & Safe Spaces."

37. The Website services page is located at https://www.abdlcommunityforus.com/services.

38. Under "Playdates & Ageplay," the Website includes a provision for an "ABDL-US VIP Playtime with Mommy (sfw)" at a rate of $300.00 USD over the course of 23 hours and 59 minutes.

39. The Website offers customers to book a "Mommy" for an initial booking fee of $149.00 USD at https://flutterwave.com/pay/abdlmommybookingfee.

40. Under "Nurseries & Safespaces," the Website indicates it has locations around the country, including but not limited to Colorado.

41. The homepage of the Website states ABDL Community can be contacted at "Tel: +1 (303) 944-7006" and "Whatsapp: +1 (303) 944-7006."

42. Based on information and belief, these are fictitious, randomly generated numbers with (303) area codes due to the various persons who have been associated with the phone number (303) 944-7006 per online databases.

43. The Website also previously listed an Oklahoma-based phone number, (580) 850-5121, as its contact number over social media accounts associated with ABDL Community.

44. The Website's FAQ page states the company accepts the following payments: "Credit cards from Visa, MasterCard, and American Express.  We also accept G Pay and Apple Pay.  Prepaid Giftcard. Discover card, PayPal, Cash-App, Zelle, Venmo, cryptocurrency or other payment methods."

45. The Website's FAQ page is located at https://www.abdlcommunityforus.com/faqs.

46. The Website, in addition, utilizes Flutterwave.com for payments from customers.

47. Flutterwave.com is a Nigerian fintech company that provides a payment infrastructure for global merchants and payment service providers across the United States.

48. The Internet Corporation for Assigned Names and Numbers (hereinafter "ICANN") is a nonprofit organization responsible for coordinating the maintenance and procedures of several databases related to Internet namespaces.

49. ICANN performs the actual technical maintenance work of the central Internet address pools and DNS root zone registries pursuant to the Internet Assigned Numbers Authority function contract.

50. An Internet domain name is the web address which an individual, business, or other entity has registered as part of a national or international Internet domain.

51. The ICANN WHOIS domain database is a listing of all registered Internet domain names.

52. The ICANN WHOIS Internet domain information for the Website lists the following:
Domain Name: ABDLCOMMUNITYFORUS.COM
Registry Domain ID: 2702940699_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.namecheap.com
Registrar URL: http://www.namecheap.com
Updated Date: 2023-05-12T00:51:24Z
Creation Date: 2022-06-11T03:41:36Z
Registry Expiry Date: 2024-06-11T03:41:36Z
Registrar: NameCheap, Inc.
Registrar IANA ID: 1068
Registrar Abuse Contact Email: abuse@namecheap.com
Registrar Abuse Contact Phone: +1.6613102107
Domain Status: ok https://icann.org/epp#ok
Name Server: NS6.WIXDNS.NET
Name Server: NS7.WIXDNS.NET

DNSSEC: unsigned

URL of the ICANN Whois Inaccuracy Complaint Form: https://www.icann.org/wicf/

>>> Last update of whois database: 2023-09-09T21:16:53Z <<<

For more information on Whois status codes, please visit https://icann.org/epp

NOTICE: The expiration date displayed in this record is the date the registrar's sponsorship of the domain name registration in the registry is currently set to expire. This date does not necessarily reflect the expiration date of the domain name registrant's agreement with the sponsoring registrar. Users may consult the sponsoring registrar's Whois database to view the registrar's reported date of expiration for this registration.

TERMS OF USE: You are not authorized to access or query our Whois database through the use of electronic processes that are high-volume and automated except as reasonably necessary to register domain names or modify existing registrations; the Data in VeriSign Global Registry Services' ("VeriSign") Whois database is provided by VeriSign for information purposes only, and to assist persons in obtaining information about or related to a domain name registration record. VeriSign does not guarantee its accuracy. By submitting a Whois query, you agree to abide by the following terms of use: You agree that you may use this Data only for lawful purposes and that under no circumstances will you use this Data to: (1) allow, enable, or otherwise support the transmission of mass unsolicited, commercial advertising or solicitations via e-mail, telephone, or facsimile; or (2) enable high volume, automated, electronic processes that apply to VeriSign (or its computer systems). The compilation, repackaging, dissemination or other use of this Data is expressly prohibited without the prior written consent of VeriSign. You agree not to use electronic processes that are automated and high-volume to access or query the Whois database except as reasonably necessary to register domain names or modify existing registrations. VeriSign reserves the right to restrict your access to the Whois database in its sole discretion to ensure operational stability. VeriSign may restrict or terminate your access to the

  Whois database for failure to abide by these terms of use. VeriSign reserves the right to modify these terms at any time.
  The Registry database contains ONLY .COM, .NET, .EDU domains and Registrars.

53. Namecheap.com is an ICANN-accredited domain name registrar and web hosting company based in Phoenix, Arizona, which allows subscribers to list Namecheap.com as their administrative and technical contacts in the Internet's WHOIS database, thereby delegating responsibility for managing unsolicited contacts from third-parties and keeping the domains owners' personal information secret.

54. Based on information and belief, John Roe and the other Defendants used Namecheap.com to prevent their personally identifying information, including but not limited to names and addresses, from being listed on the ICANN WHOIS Domain name database.

55. Defendants or their agents, based on information and belief, engaged in wire fraud pursuant to 18 U.S.C. § 1343 by taking money from ABDL Community customers under the false pretense that Ms. Doe would provide services to customers of the ABDL Community phone application or corresponding Website in exchange for receipt of the requisite funds.

56. In falsely representing that Ms. Doe is affiliated with ABDL Community and provides services in connection with the company, the Defendants have wrongfully exposed Ms. Doe to potential legal liability and risk for their misconduct, including criminal charges for wire fraud and civil lawsuits for fraud in connection with the money ABDL Community or its agents acquired using Ms. Doe's identity and intellectual property without her permission, authorization, or consent.

57. Defendants' intentional, outrageous, ongoing course of conduct has and will cause Ms. Doe anxiety, lost sleep, and severe emotional distress over the potential harm to her reputation,

wrongful legal action, and criminal charges due to a false affiliation with ABDL Community and the other Defendants.

58. Defendants' intentional, outrageous, ongoing course of conduct has and will Ms. Doe to expend considerable sums of money to protect herself and her business from further damage.

59. Defendants' intentional, outrageous, ongoing course of conduct is causing and will cause Ms. Doe to suffer damages in an amount to be determined at trial, but that in any event exceed $75,000.00 USD.

## COUNT I
## COPYRIGHT INFRINGEMENT
## (17 U.S.C. §§ 101 et. seq.)

60. The Plaintiff reasserts and realleges all preceding paragraphs as if set forth in full below.

61. The Defendants or their agents display on the ABDL Community Spaces by Wix.com phone application and the ABDL Community Facebook images, including photographs and videos, taken from Ms. Doe's social media accounts to generate profits and revenues from ABDL Community customers.

62. The Copyright Act, under which Ms. Doe brings this suit, is intended "[t]o promote the Progress of Science and useful Arts," U.S. Const. art. I, § 8, cl. 8, "by granting authors a limited monopoly over (and thus the opportunity to profit from) the dissemination of their original works of authorship." See *Hunley v. Buzzfeed, Inc.*, 1:20-CV-08844-ALC (S.D.N.Y. Sep. 30, 2021) (citing and quoting *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 95 (2d Cir. 2014)).

63. Congress has provided for four nonexclusive factors that allow an exception to the rule under the doctrine of fair use:

> "[T]he fair use of a copyrighted work . . . for purposes such as criticism, commentary, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or

> research, is not an infringement of copyright. In determining whether the use made of a work . . . is a fair use, the facts to be considered shall include-
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work."

See 17 U.S.C. § 107.

64. The inquiry concerns the transformative nature of the work. *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006). It also concerns whether the "use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). "The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 569 (1994).

65. The primary purpose and character of the use of Ms. Doe's images by Defendants or their agents is commercial in nature, specifically to obtain funds from persons who want to purchase services from ABDL Community to be performed by its agents falsely claiming to be Ms. Doe.

66. The Defendants or their agents' use of Ms. Doe's images is not transformative and makes no changes, alterations, or edits to the original images.

67. Neither Defendants nor their agents' credit or identify Ms. Doe as the author or owner of the original images subject to this Complaint.

68. Defendants or their agents used Ms. Doe's images and videos without making any modification to the copyrighted material after embedding or reposting the photos.

11

69. Defendants or their agents collected Ms. Doe's images and videos to represent her as one of the available "Mommies" or "Senior Caregivers' to book time with through their Website or the ABDL Community phone application— they do not provide any altered expression or meaning to the allegedly infringed work beyond that for which it was originally created by the copyright holders. *Nunez v. Caribbean Int'l News Corp*., 235 F.3d 18, 23 (1st Cir. 2000) ("[B]y using the photographs in conjunction with editorial commentary, " the copyrighted work transformed "into news-and not the mere newsworthiness of the works themselves.").

70. Based on information and belief, as a direct and proximate result of the Defendants or their agents using her intellectual property rights without her permission, authorization, or consent, Ms. Doe has and will continue to experience economic damages to be determined at trial, including but not limited to profits which the Defendants or their agents made using her intellectual property rights.

## COUNT II
## MISAPPROPRIATION OF LIKENESS

71. The Plaintiff reasserts and realleges all preceding paragraphs as if set forth in full below.

72. The Defendants or their agents used Ms. Doe's pictures and videos to falsely represent that she was associated with the company and would engage in intimate, sexual online activities with third-parties.

73. Ms. Doe did not consent to the Defendants or their agents using her name or likeness, including but not limited to Ms. Doe's name, photographs, videos and other identifying information.

74. The Defendants or their agents did not use Ms. Doe's name or likeness to publicize a true newsworthy event or a matter of public concern.

75. The Defendants or their agents used Ms. Doe's name or likeness to obtain a commercial benefit.

76. The invasion of Ms. Doe's privacy by the Defendants or their agents has caused and will cause her to incur the following damages in an amount to be determined at trial: attorneys' fees; investigation costs; special damages; loss of income; incidental expenses; inconveniences; emotional distress; impairment of quality of life; and reputational diminishment.

## COUNT III
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77. The Plaintiff repeats and realleges each of the allegations in the preceding paragraphs previously pled as if each were set forth in full herein.

78. The Defendants or their agents engaged in extreme and outrageous conduct toward Ms. Doe.

79. The Defendants or their agents engaged in conduct recklessly or with the intent of causing Ms. Doe severe emotional distress.

80. Ms. Doe incurred severe emotional distress caused by the conduct of the Defendants or their agents.

## COUNT IV
### VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) STATUTE, 18 U.S.C. § 1961, et. seq.

81. The Plaintiff reasserts and realleges all preceding paragraphs as if set forth in full below.

82. The individual Defendants or their agents engaged in at least two violations of federal law, including but not limited to 18 U.S.C. § 1343 ("Wire Fraud") and 17 U.S.C. 506(a) ("Criminal Copyright Infringement").

83. The principal criminal statute protecting copyrighted works is 17 U.S.C. § 506(a), which provides that "[a]ny person who infringes a copyright willfully and for purposes of commercial advantage or private financial gain" shall be punished as provided in 18 U.S.C. § 2319.

84. Defendants or their agents, as explained in preceding paragraphs, used Ms. Doe's copyrights willfully and for the purpose of commercial advantage or private financial gain in falsely representing that Ms. Doe would provide services to customers of the ABDL Community Spaces by Wix.com phone application or corresponding Website.

85. Defendants or their agents, based on information and belief, have obtained private financial gain totaling over $20,000.00 USD for the unauthorized use of Ms. Doe's copyrights and identity in the course of fraudulent representations of the services purchased by customers of the ABDL Community Spaces by Wix.com phone application or corresponding Website.

86. Defendants or their agents, based on information and belief, also engaged in wire fraud on at least two separate occasions pursuant to 18 U.S.C. § 1343 by taking money for services ABDL Community falsely represented Ms. Doe would provide to customers of the ABDL Community Spaces by Wix.com phone application or corresponding Website.

87. Ms. Doe was injured by the Defendants or their agents as a direct and proximate result of their conducting an enterprise via the ABDL Community Spaces by Wix.com phone application and corresponding Website through a pattern of racketeering activity. See *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008); see also *Phoenix Bond & Indem. Co. v. Bridge*, 477 F.3d 928, 932 (7th Cir. 2007) (emphasis in original), aff'd, 553 U.S. 639 (2008).

## COUNT V
## RESPONDEAT SUPERIOR

88. The Plaintiff repeats and re-alleges each of the allegations in the preceding paragraphs previously pled as if each were set forth in full herein.

89. Under the doctrine of respondeat superior, Defendant ABDL Community is liable for the acts of its employees or agents, the individual Defendants in this action.

90. At all times relevant, the individual Defendants acted within the scope of their duties with ABDL Community.

91. At all times relevant, the individual Defendants acted in furtherance of their duties to ABDL Community.

92. At all times relevant, the individual Defendants acted with the express authorization of ABDL Community.

93. As a direct and proximate result of the negligence, recklessness, actual malice or willfulness of the Defendants or their agents, Ms. Doe has sustained economic, mental, psychological, emotional, and reputational damages. Ms. Doe has also suffered additional injuries and damages to be proved at trial.

## COUNT VI
## AIDING AND ABETTING

94. The Plaintiff reasserts and realleges all preceding paragraphs as if set forth in full below.

95. The individual Defendants helped and encouraged each other to engage in the actions set forth above, and therefore aided and abetted each other in the commission of the respective tortious misconduct subject to this Complaint.

15

## COUNT VII
## JOINT LIABILITY

96. The Plaintiff reasserts and realleges all preceding paragraphs as if set forth in full below.

97. Defendants consciously conspired and deliberately pursued a common plan or design to commit the actions set forth above, and therefore are jointly liable pursuant to C.R.S. §13-21-111.5(4) and common law civil conspiracy.

## COUNT VIII
## PERMANENT INJUNCTION

98. The Plaintiff reasserts and realleges all preceding paragraphs as if set forth in full below.

99. Absent this Court's permanent injunction, the Defendants and their agents will continue to publish Ms. Doe's images in violation of copyright law and the common law tort of invasion of privacy by misappropriation of name or likeness.

100. Ms. Doe will suffer irreparable harm if this Court does not grant permanent injunctive relief that proscribes the Defendants and their agents from continuing to publish her images herein alleged to be subject to her copyright or interests under the common law tort of invasion of privacy by misappropriation of name or likeness.

101. This Court may grant injunctive relief that proscribes the publication of copyrighted materials as it is unlawful.

102. A permanent injunction will not unduly harm or prejudice the Defendants.

103. Public policy favors granting permanent injunctive relief in this case because granting such relief will support public policies in favor of deterring copyright and intellectual property right violations.

## REQUEST FOR RELIEF

Wherefore, Ms. Doe respectfully requests that this honorable Court enter judgment in her favor and against Defendants on Counts I through VIII above granting the following relief:

a. Permanent injunctive relief that prohibits Defendants from engaging in the conduct complained of herein;

b. Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, and immediate access to records;

c. Statutory damages pursuant to 17 U.S.C. § 504(c) or, in the alternative, actual damages based on Defendants' earnings resulting from the alleged infringement;

d. An award of damages in an amount to be determined at trial, but no less than $150,000.00 USD;

e. An award of prejudgment and post-judgment interest, as allowed by law;

f. An award of treble damages, costs, and attorney fees pursuant to 18 U.S.C. 1964(c) and any other legal grounds; and

g. Such further relief as this Court deems just and proper.

## JURY DEMAND

Ms. Doe makes a jury demand consistent with Federal Rule of Civil Procedure 38.

Respectfully submitted this 27th day of September 2023,

LAW OFFICE OF CASSANDRA M. KIRSCH, LLC

                                    */s/Cassandra M. Kirsch*
                                    Cassandra M. Kirsch, # 46502
                                    LAW OFFICE OF CASSANDRA M. KIRSCH, LLC
                                    600 17th Street, Ste. 2800-S
                                    Denver, CO 80202

                                    *Attorney for Plaintiff*

**Original Signature on File**